UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TANZA BLEDSOE,

        Plaintiff,                                  Hon. Ellen S. Carmody

v.                                                    Case No. 1:16-CV-816

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

# **OPINION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

        Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

# **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 39 years of age on her alleged disability onset date. (PageID.176). She successfully completed high school and worked previously as a medical assistant, nurse assistant, and home attendant. (PageID.68, 295). Plaintiff applied for benefits on March 8, 2013, alleging that she had been disabled since December 1, 2010, due to leaky heart valve, asthma, lower back problems, heart murmur, and eye issues. (PageID.176-81, 241). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (PageID.99-175). On October 15, 2014, Plaintiff appeared before ALJ Romona Scales with testimony being offered by Plaintiff and Plaintiff's mother. (PageID.61-88). The ALJ later submitted written interrogatories to a vocational expert. (PageID.295-301). In a written decision dated June 26, 2015, the ALJ determined that Plaintiff was not disabled. (PageID.46-55). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter. (PageID.30-35). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on March 31, 2015. (PageID.48); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

3

# ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*,

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) lumbar degenerative disc disease with radiculopathy; (2) asthma; (3) eye issues; (4) heart valve issues; (5) heart murmur; (6) uterine fibroids; and (7) obesity, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.48-50).

With respect to Plaintiff's residual functional capacity, the ALJ found that Plaintiff retained the ability to perform light work subject to the following limitations: (1) she can lift/carry 20 pounds occasionally and 10 pounds frequently; (2) during an 8-hour workday, she can sit and stand/walk for 6 hours each; (3) she can only occasionally climb; and (4) she should avoid concentrated exposure to extreme temperatures, humidity, fumes, odors, dusts, gases, and poor ventilation. (PageID.50).

Based on the testimony of a vocational expert, the ALJ found that Plaintiff retained the ability to perform her past relevant work as a medical assistant. (PageID.53-54, 296). The vocational expert further testified that there existed more than two million jobs in the national economy which Plaintiff could perform consistent with her residual functional capacity. (PageID.54, 297). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

**I.      Plaintiff is not Entitled to a Sentence Six Remand**

As part of her request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ. (PageID.30-35, 850-1081). The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination. This Court, however, is precluded from considering such material. In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also*, *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *See Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006). Plaintiff bears the burden of making these showings. *Ibid*.

Most of the medical evidence in question concerns examinations and evaluations which occurred prior to the issuance of the ALJ's decision. With respect to this evidence, Plaintiff offers no direct argument that there existed good cause for her failure to present such to the ALJ. To the extent Plaintiff argues that good cause is established by the ALJ's alleged failure to develop the record, such is rejected for the reasons articulated above. As for the medical evidence that was

procured after the ALJ issued her decision, Plaintiff has failed to establish that such is relevant to her condition and limitations during the time period in question. These shortcomings notwithstanding, this argument fails because there does not exist a reasonable probability that the ALJ would have reached a different result if presented with this evidence.

The evidence which was before the ALJ revealed the following. Plaintiff's asthma was consistently characterized as "mild." (PageID.313-14). Plaintiff was diagnosed with pellucid marginal degeneration (PMD)[2] which was likewise characterized as "mild." (PageID.758, 760). With respect to these impairments none of Plaintiff's care providers imposed on Plaintiff any limitations which are inconsistent with the ALJ's RFC determination.

With respect to Plaintiff's heart problems, the results of a February 2004 echocardiography examination were unremarkable. (PageID.310). The results of a March 2004 exercise stress test were "negative." (PageID.309). X-rays of Plaintiff's chest, taken March 7, 2013, were unremarkable. (PageID.662). On June 17, 2013, Plaintiff participated in an echocardiography examination the results of which were unremarkable. (PageID.620). The results of EKG and echocardiogram examinations, performed on or about October 19, 2013, were unremarkable. (PageID.807). Plaintiff's doctor specifically observed that Plaintiff's "cardiac workup is unremarkable and there is no structural or ischemic heart disease." (PageID.807). Plaintiff was instructed to improve her diet and exercise more regularly. (PageID.807). With respect to Plaintiff's heart impairment, none of Plaintiff's care providers imposed on Plaintiff any limitations which are inconsistent with the ALJ's RFC determination.

---

[2] Pellucid Marginal Degeneration (PMD) is a degenerative condition that causes vision to deteriorate as the cornea slowly changes shape. *See* Pellucid Marginal Degeneration, available at http://www.sclerallens.org/pellucid-marginal-degeneration (last visited on Aug. 7, 2017). PMD "progresses very gradually" and is generally treated with contact lenses or customized lenses. *Id.*

Regarding Plaintiff's back impairment, the evidence before the ALJ revealed the following. X-rays of Plaintiff's lumbar spine, taken April 1, 2010, revealed "minor" degenerative changes at the SI joints. (PageID.530). Examinations performed in November 2012 and February 2013 revealed "normal" range of motion, "normal" muscle strength, and no evidence of pain or instability in Plaintiff's extremities. (PageID.499, 515).

On June 9, 2014, Plaintiff reported that she was experiencing severe back pain. (PageID.785). A June 17, 2014 MRI of Plaintiff's lumbar spine revealed "moderate" impairment, including a synovial cyst at L4-L5. (PageID.781-82). During a September 2014 examination, Plaintiff complained that she was experiencing low back which radiated into her lower extremities. (PageID.769-80). The doctor concluded that Plaintiff's pain was "due to a right L4-5 synovial cyst compressing the passing right L5 nerve root." (PageID.779). The doctor recommended that Plaintiff undergo a "right L4-5 synovial cyst resection" which would be performed in "a minimally invasive, outpatient fashion." (PageID.779). Plaintiff agreed and underwent this procedure on November 14, 2014. (PageID.819-21). X-rays of Plaintiff's lumbar spine, taken May 16, 2015, revealed normal height and alignment with no evidence of instability. (PageID.843). An MRI of Plaintiff's lumbar spine, performed the same day, revealed no evidence of nerve compression. (PageID.842). Regarding Plaintiff's back impairment, Plaintiff's care providers did not impose on Plaintiff any permanent limitations which are inconsistent with the ALJ's RFC determination.

This medical evidence supports the ALJ's RFC determination and her ultimate decision to deny Plaintiff's claim for benefits. It is not reasonable to conclude that consideration of the additional evidence Plaintiff presented to the Appeals Council would have resulted in the ALJ reaching a different decision. On January 15, 2015, Plaintiff exhibited 5/5 strength and reported that

8

her "lower extremity radicular pain is gone." (PageID.1005). Subsequent examinations consistently revealed that Plaintiff was experiencing 2-4/10 level pain. (PageID.915, 919, 923, 935, 946, 949, 953, 956, 965, 968, 972). A May 27, 2015 MRI of Plaintiff's lumbar spine revealed "excellent decompression of the right L4-5 lateral canal with no recurrent cyst." (PageID.1026).

In sum, Plaintiff has failed to establish that the evidence first presented to the Appeals Council is material or that there existed good cause existed for not presenting it to the ALJ. Thus, remand is not appropriate and likewise the Court cannot consider this evidence in evaluating the ALJ's decision. Accordingly, this argument is rejected.

## II.  The ALJ Properly Developed the Record

Plaintiff argues that she is entitled to relief because the ALJ failed to fully develop the record. Specifically, Plaintiff faults the ALJ for failing to obtain the medical records, created prior to the ALJ's decision, referenced above. The Court is not persuaded.

Plaintiff bears "the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits." *Trandafir v. Commissioner of Social Security*, 58 Fed. Appx. 113, 115 (6th Cir., Jan. 31, 2003). As the relevant Social Security regulations make clear, it is the claimant's responsibility to provide the evidence necessary to evaluate her claim for benefits. *See* 20 C.F.R. §§ 404.1512 and 404.1514. As the Supreme Court has observed, "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *Yuckert*, 482 U.S. at 146 n.5.

Only under "special circumstances, i.e., when a claimant is without counsel, is not capable of presenting an effective case, *and* is unfamiliar with hearing procedures, does an ALJ have

9

a special, heightened duty to develop the record." *Trandafir*, 58 Fed. Appx. at 115 (emphasis added); *Nabours v. Commissioner of Social Security*, 50 Fed. Appx. 272, 275 (6th Cir., Nov. 4, 2002). Moreover, an ALJ is not obligated to supplement the record with additional evidence unless the record as it then exists is insufficient to assess Plaintiff's residual functional capacity or otherwise resolve her claims. *See, e.g., Allison v. Apfel*, 2000 WL 1276950 at *5 (6th Cir., Aug. 30, 2000); *Lamb v. Barnhart*, 85 Fed. Appx. 52, 57 (10th Cir., Dec. 11, 2003); *Haney v. Astrue*, 2010 WL 3859778 at *3 (E.D. Okla., Sept. 15, 2010); *Brown v. Commissioner of Social Security*, 709 F.Supp.2d 248, 257 (S.D.N.Y. 2010). As is recognized, "how much evidence to gather is a subject on which district courts must respect the Secretary's reasoned judgment." *Simpson v. Commissioner of Social Security*, 344 Fed. Appx. 181, 189 (6th Cir., Aug. 27, 2009). As the court further observed, to obligate the Commissioner to obtain an absolute "complete record" in each case "literally would be a formula for paralysis." *Ibid*.

The administrative hearing in this matter was originally scheduled for May 28, 2014. Plaintiff appeared at this hearing without the assistance of counsel. (PageID.91-93). The ALJ informed Plaintiff that she would be willing to postpone the hearing to afford Plaintiff an opportunity to employ counsel. (PageID.92-93). Plaintiff indicated that she had spoken with multiple attorneys, but that none of them were willing to "take the case." (PageID.94). Because Plaintiff expressed a desire to continue her attempts to employ an attorney, the ALJ agreed to postpone the hearing. (PageID.94-95). The ALJ also provided Plaintiff with information and resources to facilitate locating an attorney. (PageID.93-95).

The administrative hearing resumed on October 15, 2014. Plaintiff indicated that she had recently spoken with Legal Aid, but that they had not agreed to represent her. (PageID.64).

Plaintiff agreed to go ahead with the hearing, but the ALJ told Plaintiff that if she obtained counsel by November 15, 2014, she would conduct another administrative hearing. (PageID.86-87). The ALJ also agreed to keep the administrative record open so that Plaintiff could submit additional medical evidence. (PageID.85-87). Subsequent to the administrative hearing, the ALJ received into the record numerous medical records. (PageID.59-60, 781-848). Moreover, on November 3, 2014, and again on December 2, 2014, the ALJ informed Plaintiff in writing of her intent to enter into the administrative record certain medical records that the ALJ obtained subsequent to the administrative hearing. (PageID.280-83). Plaintiff was informed of her rights regarding this evidence, including the right to request a supplemental hearing. (PageID.280-83). There is no indication that Plaintiff responded to this correspondence.

In sum, while Plaintiff was not represented by counsel at the administrative hearing, there is no indication that Plaintiff was incapable of effectively advocating her position. The ALJ nevertheless made reasonable efforts to obtain Plaintiff's medical records. Moreover, the ALJ reasonably concluded that the record before her was sufficient to resolve Plaintiff's claim for benefits. Finally, even if the ALJ did err by failing to secure the medical records in question, as discussed above their inclusion would not have resulted in a different outcome. Thus, any error in this regard is harmless. *See, e.g., Alvarez ex rel. J.A. v. Astrue*, 2010 WL 3370396 at *4 (N.D. Ohio, Aug. 25, 2010) ("[e]ven when an ALJ fails to develop the record, however, courts need not remand if the error was harmless"); *Walls v. Astrue*, 282 Fed. Appx. 568, 571-72 (9th Cir., June 5, 2008) (ALJ's failure to fully develop the record found harmless where evidence in question would not have supported a different outcome); *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (recognizing that the

harmless error doctrine is intended to prevent reviewing courts from becoming "impregnable citadels of technicality"). This argument is, therefore, rejected.

**III.        The ALJ's Step Three Determination is Supported by Substantial Evidence**

As noted above, at Step 3 of the sequential evaluation process, the ALJ must determine whether a claimant's impairments meet or equal a listed impairment. In this case, the ALJ determined that Plaintiff's impairments neither met nor medically equaled any listed impairment. Plaintiff argues that she is entitled to relief because the ALJ made this medical equivalence determination without benefit of an opinion from a medical expert. Specifically, Plaintiff argues that she should have been found to have limitations that were equivalent to the listing for 1.04 (disorders of the spine).

The argument that an ALJ is *obligated* to obtain an expert medical opinion on the question of medical equivalence has been persuasively rejected by other courts in this District. *See, e.g., Garza v. Commissioner of Social Security*, 2015 WL 8922011 at *6-9 (W.D. Mich., Nov. 25, 2015); *Clanton v. Commissioner of Social Security*, 2016 WL 74421 at *5-8 (W.D. Mich., Jan. 6, 2016). Moreover, as the Sixth Circuit authority cited by Plaintiff holds, Plaintiff bears the burden to demonstrate that her impairments meet or equal a listed impairment. *See Retka v. Commissioner of Social Security*, 1995 WL 697215 (6th Cir., Nov. 22, 1995) (recognizing that regardless whether a medical opinion on the issue of equivalence is required, "[i]t is the claimant's burden at this third step in the sequential evaluation to bring forth evidence to establish that he or she meets or equals a listed impairment"). Plaintiff cannot meet her burden in this regard.

A. Section 1.04

Section 1.04 provides as follows:

*Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root. . .or the spinal cord. With:

    A.    Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine), or

    B.    Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

    C.    Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in an inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.04.

The medical evidence does not support the argument that Plaintiff suffers from a "compromise of a nerve root. . .or the spinal cord." The evidence further reveals that Plaintiff cannot satisfy subsections A, B, or C of this particular Listing. The ALJ specifically analyzed whether Plaintiff's impairments met or equaled Section 1.04, concluding that such was not the case. This determination is supported by substantial evidence. Accordingly, this argument is rejected.

13

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.

Date: August 8, 2017  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge